IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

AMERICAN PHYSICIANS ASSURANCE
CORPORATION,

       Plaintiff,

vs.                                            Civ. No. 08-638 PJK/ACT

DONALD JAMES HAM, MD, et al.,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court upon Plaintiff/Counter-Defendant Americans Physician's Assurance Corporation's ("APA") Motion for Protective Order and Brief in Support filed April 10, 2009 [Doc. 65]. The Defendants/Counter-Plaintiffs, Dr. Donald James Ham ("Ham") and Alamogordo Eye Clinic ("AEC") responded on April 24, 2009 [Doc. 72] and APA replied on May 13, 2009 [Doc. 81]. The Court having reviewed the pleadings and the law finds that APA's Motion is well taken in part.

On July 15, 2004, Ham performed cataract surgery on Martha Cardon. During the surgical procedure, she suffered a myocardial infarction and died ten days later. Her Estate sued Ham and AEC. On May 23, 2008, a jury returned a verdict in favor of the Estate and against Ham and AEC. The verdict form completed by the jury reflects a compensatory damages award of $95,059.43 and a punitive damages award of $6,000,000.

This is a declaratory judgment action filed by APA against Ham and AEC related to a policy of insurance. APA seeks a declaration concerning the parties' respective rights and obligations under the applicable policy of insurance and Ham and AEC seeks an award of damages relating to APA's alleged bad faith in discharging its obligations under the policy.

APA is seeking a protective order pursuant to Fed.R.Civ.P. 26(c)(1). Rule 26(c)(1) states in part:

> "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including....(G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way...."

The decision to issue a protective order rests within the sound discretion of the trial court. *Wang v. Hsu*, 919 F.2d 130 (10th Cir. 1990). Such protection is warranted, upon a showing of good cause, to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," and can include an order "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed.R.Civ.P. 26(c)(1). The burden is on the party resisting discovery or dissemination to establish that the information sought should be subject to additional protection. *Reed v. Bennett*, 193 F.R.D. 689, 690 (D. Kan. 2000). To meet this burden, the moving party must set forth specific facts showing good cause, not simply conclusory statements. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n. 16 (1981).

The documents at issue are APA's claims handling manuals and other documents relating to claims handling, organizational charts and portions of the claim file in this matter. Ham and AEC assert that the proposed protective order is overly broad and that the documents at issue are not privileged, confidential or trade secrets.

The Court agrees that the proposed protective order is overly broad. The list of documents protected under the proposed order includes documents that have not been requested and/or may not be considered confidential or protected trade secrets. [Doc. 72, Response at 3, ftnt. 1.] However, APA has demonstrated that the claims manual should be produced pursuant to a protective order. APA states that "[t]he Manuals have never been produced in absence of a protective order...." [Doc. 65, Motion at 6.] In addition, APA has a Code of Ethics and Conduct ("Code") which states the importance of protecting APA's propriety and confidential business information. [Doc. 81, Reply, at 4.] The Code further provides that "AP Capital's success depends on each of us protecting the company's assets, including physical equipment, funds, *information* and reputation." *Id*. at 3 (emphasis added). APA has taken steps to keep their business information confidential and it would be prejudicial to APA if their claims handling procedures were produced without a protective order. These facts are sufficient to demonstrate that production of the claims manuals should be protected. APA has agreed to produce the flow charts concerning APA's corporate structure but wants a commitment that these documents will not be disseminated beyond this case. APA has not demonstrated that its organizational charts are confidential. APA states only in a conclusory fashion that it's organizational charts are confidential and proprietary. APA has not met its burden concerning these charts and the Court finds they are not confidential and therefore must be produced.

Finally, APA asserts that it "has not withheld claims handling information [Doc. 81, Reply at 2] and that it "remains willing to allow counsel for Ham to inspect (but not copy) the confidential documents" in its possession and control [Doc. 65, Motion at 3]. However, APA asserts that the claims file must only be produced pursuant to a protective order because it contains communications of defense counsel, Lynn Sharp, to Ham and to APA adjusters and thus is protected by the attorney

client privilege and the work product doctrine . [1]  APA further asserts that Lynn Sharp represented both Ham and APA under the "common interest doctrine." [Doc. 65, Motion at 7.]  A review of the law however, shows that APA has failed to demonstrate that the claims file is protected under any privilege or doctrine.

Under New Mexico law, the attorney-client privilege applies to "confidential communications made for the purpose of facilitating the rendition of professional legal services to the client." *Bd. of Comm'rs of Dona Ana County v. Las Cruces Sun News*, 134 N.M. 283, 291, 76 P.3d 36, 44 (2003).

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client,
> (1) between the client and the client's lawyer or his lawyer's representative, or
> (2) between the client's lawyer and the lawyer's representative, or
> (3) by the client or client's lawyer to a lawyer representing another in a matter of common interest, or
> (4) between representatives of the client or between the client and a representative of the client, or
> (5) between lawyers representing the client.

NMRA 11-503.

The party asserting the attorney-client privilege bears the burden of demonstrating that it applies and that it has not been waived. *Pina v. Espinoza*, 130 N.M. 661, 668, 29 P.3d 1062, 1069 (2001) (stating that the party asserting attorney-client privilege must demonstrate the attorney-client privilege's applicability *citing State v. Gallegos*, 92 N.M. 370, 378, 588 P.2d 1045, 1053 (Ct.App.1978); *United Nuclear Corp. v. Gen. Atomic Co.*, 96 N.M. 155, 629 P.2d 231, 293 (1980), *cert. denied* (1981). ("The bald assertion that production of the requested information would violate

---

[1] New Mexico's attorney-client privilege law applies to this diversity case. Federal law, however, continues to govern issues related to the work-product privilege. *Valencia v. Colorado Casualty Insur. Co.*, 2007 WL 5685148, D.N.M., December 06, 2007 (NO. CIV 06-1259 JB/RHS).

a privilege (provided by law) is not enough. The party resisting discovery has the burden to clarify and explain its objections and to provide support therefor. General objections without specific support may result in waiver of the objections.") (internal quotations omitted).

Similarly, a party asserting work-product protection has the burden of demonstrating that it applies. *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995). The purpose of the work product doctrine is to protect an attorney's strategies and legal impressions. The protection applies to "attorneys' or legal representatives' mental impressions, conclusions, opinions, or legal theories authored in anticipation of litigation." *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 668 (10th Cir. 2006). Accordingly, the doctrine "does not protect facts concerning the creation of work product or facts contained within work product." *Resolution Trust Corp.*, 73 F.3d 266. . "A mere allegation that the work product doctrine applies is insufficient." *Id.* The party also has the burden of showing that work-product protection has not been waived. *Anaya v. CBS Broadcasting, Inc.*, No. CIV 06-476 JB/KBM, 2007 WL 2219394, at *5 (D.N.M. April 30, 2007).

APA filed this lawsuit seeking a declaration of the parties' rights and obligations. Neither the parties nor the Court can properly determine the rights and obligations of the parties without analysis of the facts and advice that were provided to the parties by their counsel. Presumably APA will rely on some or all of the information in the claims file to support its claims and defenses. Therefore, APA has waived any claim of privilege or work product protection. *Santa Fe Pacific Gold Corp. v. United Nuclear Corp.,* 143 N.M. 215, 175 P.3d 309 (Ct. App. 2007) ("To support a finding of waiver, New Mexico requires an offensive or direct use of privileged materials." (citations omitted); *Anchondo v. Anderson, Crenshaw & Assoc.*, LLC, 256 F.R.D. 661 (D. N.M. 2009) ("The party 'cannot use the work product doctrine as both a sword and shield by selectively using the

5

privileged documents to prove a point but then invoking the privilege to prevent an opponent from challenging the assertion.' *Frontier Refining*, 136 F.3d at 704.")

The Court also notes that APA did not produce a privilege log nor did it refer to any specific communications or documents which it claims are privileged or protected. APA merely referred to the "adjustment claim file" and documents "found elsewhere in APA's files that are protected by either the attorney-client privilege or work product protection...." Motion at 8.

In addition, APA has not demonstrated that the "common interest" doctrine applies to these communications. To establish that the common interest rule protects a communication APA must establish (1) that each document contains a privileged communication and (2) that each document disclosed to APA was designed to further the common legal interest. *Santa Fe Pacific Gold Corp,*. 143 N.M. at 222, 175 P.3d at 316. The common interest rule is an expansion of the attorney client privilege and work product doctrine; it is not a separate privilege. Thus, if there is no privilege or protection that would apply to a communication or document, or if any privilege or protection has been waived, there can be no common interest extension of the privilege.

The Court will order that the claims manual be produced subject to a narrowly drawn protective order. The Court will not enter the proposed protective order due to its lack of specificity. Nor will the Court order that the organizational chart and the claims file be produced pursuant to a protective order.

**IT IS THEREFORE ORDERED** that the parties enter into a Stipulated Protective Order concerning APA's claims manuals and submit it to the Court for approval within ten (10) days of the entry of this Order. If the parties cannot agree as to the form of the Order the parties are to each submit proposed orders for the Court's consideration.

**IT IS FURTHER ORDERED** that the remaining requests in APA's Motion are denied.

_____
**ALAN C. TORGERSON**
**UNITED STATES MAGISTRATE JUDGE**