## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**AMERICAN PHYSICIANS ASSURANCE CORPORATION,**

       **Plaintiff,**

**v.**                                  **No. 1:08-CV-00638 PJK/ACT**

**DONALD JAMES HAM, MD,**
**ALAMOGORDO EYE CLINIC, INC., and**
**THE ESTATE OF MARTHA VALENCIA CARDON, DECEASED**
**By and through Personal Representative Elizabeth Alvarez**

       **Defendants.**

### PRE-TRIAL ORDER

       This matter is before the Court pursuant to Fed. R. Civ. P. 16. The parties conferred and

submit the following Pretrial Order.

### I. APPEARANCES

Attorneys who will try the action:

       For Plaintiff/Counter-Defendant: TIMOTHY L. FIELDS and JENNIFER G. ANDERSON,
                                 Modrall, Sperling, Roehl, Harris & Sisk, P.A.

       For Defendant/Counter-Plaintiff: MARK C. DOW, CHRISTOPHER P. BAUMAN,
                                 SIMONE M. SEILER, and BRIAN G. GRAYSON
                                 Bauman, Dow and Leon, P.C.

### II. JURISDICTION AND RELIEF SOUGHT

**A.**    **Subject Matter Jurisdiction.**

       **1.**      **Was this action removed or transferred from another forum? \_\_\_ Yes _X_ No**

       If yes, was the action removed or transferred?

       **\_\_\_\_\_** Removed **\_\_\_\_\_** Transferred   **_X_** Original forum

-1-

**2.**      **Is subject matter jurisdiction of this Court contested?**

_____ Uncontested   __X__ Contested <u>Defendant/Counter-Plaintiff</u> Party contesting

**3.**      **Asserted basis for jurisdiction.**

_____ Federal Question   __X__ Diversity   _____ Other

Statutory Provision(s) Invoked: _____.

**B.**      **Personal Jurisdiction and Venue.**

**1.**      **Is personal jurisdiction contested?**

__X__ Uncontested _____ Contested

Identify the party contesting personal jurisdiction and basis for objection:

_____

**2.**      **Is venue contested?**

__X__ Uncontested _____ Contested _____ Party contesting

**C.**      **Are the proper parties before the Court?**

_____ Uncontested   __X__ Contested

If contested, identify each missing party or improper party and the basis for the contention:

Defendants/Counter-Plaintiffs believe Erla Lutz and the Patient Compensation Fund are necessary and indispensable parties.

**D.**      **Identify the affirmative relief sought in this action.**

**1.**      Plaintiff/Counter-Defendant seeks: A declaratory judgment relating to the parties' rights and obligations under the applicable policy of insurance.  Specifically, Plaintiff American Physicians Assurance Corporation (APA) respectfully requests this Court to declare the rights and obligations of the parties hereto in accordance with American Physicians Assurance

-2-

Corporation contentions herein; specifically, finding that (1) American Physicians Assurance Corporation is no longer obligated to continue to defend Dr. Ham and/or the Alamogordo Eye Clinic in the Litigation or in any subsequent appeal, (2) American Physicians Assurance Corporation is entitled to a monetary judgment in a presently unknown amount for those costs and attorneys' fees incurred in continuing to defend Dr. Ham and/or the Alamogordo Eye Clinic after July 2, 2008, (3) American Physicians Assurance Corporation is entitled to a monetary judgment in a presently unknown amount for any amounts expended in premiums on an appeal bond, (4) American Physicians Assurance Corporation is entitled to a monetary judgment for reimbursement in a presently unknown amount to the extent that the funds deposited by American Physicians Assurance Corporation exceed American Physicians Assurance Corporation's obligations under the Policy, (5) American Physicians Assurance Corporation is not responsible for punitive damages under the Policy, (6) the limit of the Policy is $200,000 total rather than $200,000 for each of the defendants in the underlying action, and (7) that American Physicians Assurance Corporation is not obligated to pay any award of pre-judgment interest in the Litigation pursuant to the unambiguous terms of the Policy.

Additionally, APA denies and seeks a dismissal of the counterclaims asserted by Defendants/Counter-Plaintiffs.

**2.**     Defendants/Counter-Plaintiffs seek:

    **a.**     **Declaratory Judgment Action.**

The Counter Plaintiffs request this Court's determination of 1) the rights and liabilities of the parties under the contract of insurance both before and after the verdict and the entry of judgment against Dr. Ham; and 2) whether Section IV of the Policy is ambiguous.

    **b.**     **Bad Faith Breach of Contract.**

-3-

The Counter Plaintiffs are owed an award of damages from APA and such other relief as the Court deems just and proper to include compensatory damages, punitive damages, prejudgment interest, post-judgment interest, attorneys fees and costs.

   **c.** **Knowing and/or Willful Violations of the Insurance Practices Act.**

The Counter Plaintiffs are owed an award of damages from APA and such other relief as the Court deems just and proper to include compensatory damages, punitive damages, prejudgment interest, post-judgment interest, attorneys fees and costs.

   **d.** **Bad Faith Failure to Indemnify, Defend, Settle, and Appeal.**

Dr. Ham and AEC are owed an award of damages from APA and such other relief as the Court deems just and proper to include compensatory damages, punitive damages, prejudgment interest, post-judgment interest, attorneys fees and costs.

   **e.** **Damages Sought.** Dr. Ham and AEC are owed an award of damages from APA and such other relief as the Court deems just and proper to include compensatory damages, punitive damages, prejudgment interest, post-judgment interest, attorneys fees and costs.  Dr. Ham and AEC seek the following actual and compensatory damages:

  **A.** $2,005,000.00 that Dr. Ham paid to the Estate of Cardon to settle the case.

  **B.** Other compensatory damages:

   **a.** $4820.63 for appraisal of Dr. Ham's business property by Rio Bravo Appraisers & Housing Support, Inc. to secure the appeals bond on September 16, 2008;

   **b.** $9558.11 for appraisal of Dr. Ham's residential property by Denton Colvin & Associates to secure the appeals bond on September 30, 2008;

**c.**   $16,250 paid to First National Bank for letter of credit commitment for appeals bond;

**d.**   $49,621.76 in attorneys' fees to Burroughs & Rhodes in attempting to obtain an appeal bond and forced settlement to avoid bankruptcy;

**e.**   $4294.90 in attorney's fees to Robert Jacobvitz for preparation of the AEC's business and Dr. Ham's personal bankruptcy filings;

**f.**   $4892.05 in accounting fees to Accounting & Consulting Group, LLP for putting together financial data required to secure the appeals bond; and

**g.**   Attorney's fees for Bauman, Dow & Leon, PC.  These fees will be determined under post-judgment motions to be determined by the court, if any, pursuant to NMSA § 39-2-1, § 59A-16-30.

**C.**   $200,000 from APA for breach of insurance contract.

**D.**   Prejudgment interest at the statutory rate on items A-C to be determined by an accountant or other expert at trial.

### III.  BRIEF DESCRIPTION OF NATURE OF CLAIMS/DEFENSES

**A.**   **Plaintiff/Counter-Defendant's claims and defenses:**

APA's claim for declaratory judgment is based on the lack of ambiguity in the applicable provisions of the Policy.  The Policy unambiguously excludes coverage for punitive damages, and further unambiguously limits APA's obligation to pay interest to the interest that accrued on the entire judgment between July 2, 2008 and July 17, 2008, the date on which APA deposited its $200,000 policy limits with the trial court.  Additionally, the policy unambiguously provides that APA had no obligation to continue to defend Defendants/Counter-Plaintiffs following the

-5-

deposit of $200,000 on July 17, 2008, and that APA had no obligation to furnish or obtain any appellate bond or to pay the premium for any appellate bond ultimately secured by Dr. Ham.

APA's defenses to Dr. Ham's claims include the fact that APA offered its policy limits and attempted to settle the claims against Dr. Ham and AEC prior to trial, but was unable to do so given that the plaintiff in the medical malpractice case was never willing settle for anything below $694,000, and that the Patients Compensation Fund ("Fund") made a series of conscious decisions at various times prior to trial to not contribute money toward settlement of the claims. APA properly adjusted the claim against Dr. Ham and AEC, and acted quickly to secure settlement authority in advance of mediation and within days of being advised that Dr. Ham desired to settle, rather than try, the claims pending against him.  APA also sought to obtain a contribution toward settlement from the Fund, to no avail.

After the verdict was rendered on May 23, 2008, APA participated in additional settlement discussions and attended an additional mediation in an effort to prevent a judgment from being entered against Dr. Ham.  Toward that end, APA offered to pay in excess of its policy limits at the post-trial mediation.  The settlement efforts were unsuccessful, and judgment was entered on July 2, 2008.  Thereafter, APA sought leave to deposit $200,000 with the trial court, and APA's request for leave was granted on July 17, 2008.  Pursuant to the Policy, the depositing of the $200,000, an amount which exceeded APA's obligations to Dr. Ham and AEC under the Policy, triggered certain rights under the Policy, including the right to no longer provide a defense, release of the obligation to pay the premiums associated with any supercedeas bond ultimately secured by Dr. Ham, and release of APA's obligation to pay any additional post-judgment interest on the judgment.  Notwithstanding the fact that these provisions afforded APA the rights described above, APA continued to pay for Dr. Ham's trial attorney, and hired an

-6-

appellate attorney to represent him in the event Dr. Ham secured an appellate bond and pursued an appeal.  Additionally, APA agreed to allow Dr. Ham to use the deposited funds as collateral for a supercedeas bond, and further agreed to pay the premium for any supercedeas bond Dr. Ham secured, despite APA's lack of obligation to do so.

APA steadfastly denies that it did anything to interfere in Dr. Ham's defense, and its denial is corroborated by the testimony of Lynn Sharp, Dr. Ham's defense counsel, and Dr. Ham's testimony.  APA further denies that it engaged in any conduct that is violative of the Insurance Practices Act because:  1) there is no actionable misrepresentation upon which the claim is premised, 2) APA appropriately responded to communications under the circumstances, and 3) APA provided reasonable explanations to Dr. Ham and further appropriately and properly investigated the claims at issue.

**B.      Defendants/Counter-Plaintiffs' claims and defenses:**

The underlying action is a medical malpractice fatality claim against the AEC and Dr. Ham arising from an incident in which a Clinic patient (the Estate of Cardon), under the care of Dr. Ham, suffered a myocardial infarction while undergoing cataract surgery.

**1.  Declaratory Judgment Claim**

There is a dispute as to the rights and the liabilities of the parties under the APA policy. There is also a dispute as to the ownership of the $200,000 placed in the state court registry and returned to APA over Dr. Ham's and AEC's objections.

APA sold Dr. Ham and AEC a medical liability insurance policy that was in effect from July 15, 2004 to July 14, 2005, bearing policy number PM 3452 PR 23393.  The Policy is a professional liability policy which provides a per occurrence limits of $200,000.

In addition to the $200,000 liability limits, the Policy, in its "Supplemental Payments,

Limits" section, further provides coverage for costs and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before tender of the company's liability.  Section IV provides in relevant part:

### IV.  SUPPLEMENTARY PAYMENTS, LIMITS.

    A.  Pay all premiums on bonds to release attachments for an amount not in excess of the applicable limits of liability in the policy and all premiums on appeal bonds required by any such defended suit, but without any obligation to apply for or furnish any such bond;

    B.  Pay all expenses incurred by the company, all costs taxed against the insured in such suit and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon;

    . . .

    D.  Not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

Dr. Ham contends that this section is ambiguous and conflicting, especially when applied to APA's duty to defend in an appellate context.   The phrases "payment of judgments or settlements" and "which accrues after entry of the judgment" are also ambiguous and essential to determining the propriety of APA's actions after the verdict was entered.   The Policy also appears to assume that the duties to defend and to indemnify are linked to one another in such a way that indemnification can terminate the duty to defend.

-8-

### 2. Bad Faith Breach of Contract

There was an express or implied duty in the contractual relationship between APA, Dr. Ham and AEC – arising out of the APA policy at issue herein – whereby APA covenanted to protect Counter Plaintiffs from reasonably foreseeable exposure to an excess damage award. Such an award, whether covered or not, could have been prevented through settlement of the underlying claim for a reasonable amount within policy limits. At all times herein APA controlled the defense and refused to take appropriate steps to settle within policy limits to protect its insured. In controlling the defense, there is an implied duty of good faith and fair dealing.

On one or more occasions there were reasonable offers made, to settle the underlying litigation within policy limits – where at the time of each offer of settlement the Fund was in a position to cover any excess amount necessary to meet said settlement demands.

At the time of each of the one or more offers of settlement mentioned it was reasonably foreseeable that Counter Plaintiffs were exposed to a damages award that might not be entirely covered when viewed *post hoc*.

Regardless of the aforementioned foreseeability and position to settle, APA failed to enter into a settlement, but for which the judgment against Dr. Ham and AEC would never have been rendered. APA acted in bad faith.

As a proximate result of the aforementioned failure to settle and act in good faith, Counter Plaintiffs were exposed to the judgment described herein, which when viewed *post hoc* is not covered by APA's policy, thereby leaving APA's insureds, Dr. Ham and AEC, exposed to $6 million of said judgment without coverage, together with interest on the judgment in the approximate amount of $1.5 million, or more. Dr. Ham and AEC were unable to post an appeal

bond because APA refused to post a bond for the interest on the entire amount of the $6.0 million judgment, to include the post-judgment interest which rendered a bond requirement of $8.0 million which Counter Plaintiffs could not afford placing them in imminent threat of bankruptcy.

APA's aforementioned conduct was committed with a wanton and/or reckless disregard for the rights of their insureds, Counter Plaintiffs.

Dr. Ham and AEC are owed an award of damages from APA and such other relief as the Court deems just and proper to include compensatory damages, punitive damages, prejudgment interest, post-judgment interest, attorneys fees and costs.

### 3. Knowing and/or Willful Violations of the Insurance Practices Act

APA was at all times material hereto, bound to comply with applicable provisions of New Mexico's Insurance Code. APA breached the Insurance Practices Act in multiple ways in its handling of Dr. Ham's case.

APA misrepresented to Dr. Ham and the AEC pertinent facts or policy provisions relating to coverages at issue herein. NMSA § 59A-16-20 (A). APA continues post judgment, to misrepresent to Dr. Ham and AEC pertinent facts or policy provisions relating to coverages at issue herein.

APA has failed to acknowledge and act reasonably promptly upon communications with respect to claims from Dr. Ham and AEC arising under its policies at issue. NMSA § 59A-16-20 (B). APA took three and a half months to acknowledge a communication from Dr. Ham's personal counsel demanding settlement of the case.

APA has failed to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under the policies.  NMSA § 59A-16-20 (C).  That standards that have been adopted are often not implemented when claims are processed.

APA did not, at all times relevant hereto, attempt in good faith to effectuate prompt, fair and equitable settlements of Dr. Ham and AEC claims in which liability had become reasonably clear.  NMSA § 59A-16-20 (E).  Dr. Ham and AEC can provide evidence and testimony at trial that APA did not give its claims representative settlement authority prior to mediation, and that APA has a pattern and practice of sending claims representatives to mediation without settlement authority.  APA also has a pattern of offering insubstantial sums to settle cases, pushing them to trial.  This lowball-type settlement offer was also made in Dr. Ham's case.

APA failed to promptly provide a reasonable explanation of the basis relied on in the policies at issue in relation to the facts or applicable law for denial of at least one compromise settlement offer.  NMSA § 59A-16-20 (N).  APA failed to take any action on a Rule 1-068 Offer of Settlement and never explained the lack of acceptance to its insureds.

APA committed at least one of these acts knowingly and willfully.

Dr. Ham and AEC are owed an award of damages from APA and such other relief as the Court deems just and proper to include compensatory damages, punitive damages, prejudgment interest, post-judgment interest, attorneys fees and costs.

**d.     Bad Faith Failure to Indemnify, Defend, Settle, and Appeal.**

APA had a duty to timely investigate and fairly evaluate the claims in the underlying litigation against Dr. Ham and AEC.

APA had a duty to indemnify and pay all costs and interest which accrued upon entry of the judgment and the fixing of costs and interest by the state court.

-11-

APA had a duty to defend, including the appeal of the excess judgment against its insureds.

APA had a duty to assist in the appeal by making available its company's liability to facilitate the appeal, to include all costs and interest on the full amount of any judgment.

APA had a duty to assist in the appeal by posting security or collateral for the full amount of the company's liability, to include all costs and interest assessed by the trial judge for the company's liability.

APA had a duty to accept reasonable settlement offers within policy limits to settle the aforementioned claims against Dr. Ham and AEC.

APA failed to conduct competent investigations of the aforementioned claims.

APA failed to honestly and fairly balance their interests and interests of Dr. Ham and AEC.

APA rejected one or more settlement offers within policy limits, and failed to post its full limits of its indemnity in a timely fashion to protect its insureds.

APA recklessly disregarded the interests of Dr. Ham and AEC by refusing to settle the underlying case for reasons that were frivolous or unfounded.

Dr. Ham and AEC are owed an award of damages from APA and such other relief as the Court deems just and proper to include compensatory damages, punitive damages, prejudgment interest, post-judgment interest, attorneys fees and costs.

APA has a corporate policy and has engaged in a pattern and practice of refusing to enter into good faith negotiations which expose their insured doctors to excess liability.

APA has a corporate policy of interfering with the defense and settlement process of their insured doctors, *inter alia*:

-12-

a)      Refusing to attempt to settle cases against their doctors that are meritorious cases and/or which expose their doctors to excess liability;

b)      Interfering with settlement negotiations with their insureds by excluding the presence of the doctor's defense counsel and from the PCF during settlement communications [this is a violation N.M. rules of Professional Conduct, Rule 16-108(F)(2), "A lawyer shall not accept compensation for representing a client from one other than the client unless:…(2) there is no interference of professional judgment or with the client-lawyer relationship."];

c)      Interfering with the attorney-client relationship of their defense counsel concerning settlement negotiations, payment of defense costs and interfering with the filing of motions and the defense of their insureds; and

d)      Interfering with the defense and appeal of their insureds.

APA has a corporate policy of placing its economic interests ahead of its insured doctors by refusing to enter into good faith settlement negotiations.

As a proximate cause of APA's conduct Dr. Ham has been injured in the amount of $2,005,000, plus prejudgment interest, post-judgment interest, incidental and consequential damages, to include consequential damages for insurance bad faith.

APA acted intentionally, knowingly, willfully, and recklessly, causing injury to Dr. Ham and AEC for which exemplary and punitive damages may be awarded.

The conduct of APA subjected Dr. Ham and AEC not only to catastrophic excess liability, but also to bankruptcy.

**C.**    **Claims or defenses of other party(s):**

-13-

N/A

## IV. FACTUAL CONTENTIONS UNDERLYING CLAIMS/DEFENSES

**A.** **Stipulated Factual Contentions.**

The parties are working towards a set of stipulated facts, as requested by this Court in the November 9, 2009 status conference, which will be incorporated by reference.

**B.** **Contested Material Facts.**

**1.** Plaintiff/Counter-Defendant's contentions:

    **a.** APA attempted in good faith to timely settle the case prior to trial.

    **b.** APA offered its policy limits in advance of trial.

    **c.** At no time prior to May 23, 2008 would the Estate have accepted $200,000 to settle the claims by the Estate against Dr. Ham and AEC.

    **d.** APA settled the underlying case with the Estate for Dr. Ham's and AEC's benefit.

    **e.** APA obtained a full release of claims and a dismissal of the Estate's complaint and the transcripts of judgment when it settled the underlying case with the Estate.

    **f.** APA denies that it is engaged in any pattern or practice of putting its interests ahead of the interests of its insureds. APA further denies that pattern and practice evidence is relevant in this case.

    **g.** APA disputes that there was any bad faith breach of contract and all factual allegations underlying such claims.

    **h.** APA disputes that there were any knowing or willful violations of the Insurance Practices Act and all factual allegations underlying such claims.

    **i.**    APA disputes that there was any bad faith failure to indemnify, defend, settle and/or appeal the claims against Dr. Ham and AEC, and all factual allegations underlying such claims.

    **j.**    APA disputes that any claimed damages are attributable to APA's conduct.

    **k.**    APA disputes the amount of damages claimed by Dr. Ham and AEC.

    **l.**    APA disputes that Dr. Ham and AEC properly mitigated any claimed damages.

    **m.**    APA disputes all other factual claims herein of Dr. Ham and AEC not specifically addressed.

**2.**    Defendants/Counter-Plaintiffs Contentions:

    **a.**    Dr. Ham and AEC dispute that APA had no obligation to continue to defend, appeal and assist with the appeal to include posting collateral for the bond in the full amount of the company's liability.

    **b.**    Dr. Ham and AEC dispute that the $200,000 deposit with the state court registry relieved APA from its duty to defend and assist in the appeal.

    **c.**    Dr. Ham and AEC dispute that on July 17, 2008, the limit of APA's liability was $200,000.

    **d.**    Dr. Ham and AEC dispute that APA's claims representative had any settlement authority when he attended the mediation on January 17, 2008.

    **e.**    Dr. Ham and AEC dispute that APA attempted in good faith to timely settle the case prior to trial.

**f.**      Dr. Ham and AEC dispute all other factual claims herein of APA not

specifically addressed.

## V.  APPLICABLE LAW

**A.**      **Do the parties agree which law controls the action?**

    X    Yes  _____ No

**If yes, identify the applicable law.**  New Mexico.

    **LAW OF THE CASE.** Disputed.

**If no, identify the dispute and set forth each party's position regarding the applicable law.**

**1.**    Plaintiff:  N/A

**2.**    Defendants:  N/A

## VI.  CONTESTED ISSUES OF LAW

**Identify the specific issues of law which are contested.**

**1.**    Plaintiff/Counter-Defendant:

    **a.**      Whether APA's July 17, 2008 deposit of $200,000 exhausted its

    obligations under the Policy.

    **b.**      Whether the Policy provisions that are the subject of previous motions are

    ambiguous.

    **c.**      Whether APA had an obligation to pay pre-judgment interest under the

    Policy.

    **d.**      Whether APA had an obligation to contribute post-judgment interest that

    had not yet accrued as collateral for purposes of securing a supercedeas

    bond.

    **e.**      All issues of law identified by Defendants/Counter-Plaintiffs herein.

2.      Defendants/Counter-Plaintiff:

    **a.**      Whether New Mexico would embrace the rule that an insurer's duty to defend the insured is not exhausted merely by tendering policy limits prior to an appeal.

    **b.**      Whether APA's deposit of $200,000 with the state court constituted a payment of a judgment or settlement that would exhaust the applicable limit of the insurer's liability.

    **c.**      Whether APA failed to factually exhaust the policy limits.

    **d.**      Whether New Mexico would embrace the rule that an insurer has a duty to assist in the procurement of an appeal bond where there are reasonable grounds for an appeal.

    **e.**      Whether APA's insurance policy requires it pay all costs and all interest on the entire amount of any judgment which accrues and is fixed by the underlying state court at the time of judgment.

    **f.**      Whether the state court fixed the amount of costs, prejudgment interest and post-judgment interest pursuant to Rule 1-062, NMRA requiring APA to provide cash or collateral for the full amount of APA's liability under the policy to assist the insured acquire a bond.  Dr. Ham made available a $6.5 million letter of credit covering the $6.0 in punitive damages.  APA was responsible as a matter of law to post either collateral or pay cash to cover the $95,000, plus all costs and all interest to include all prejudgment and post judgment interest, or the entire amount of the insurance company's liability under its policy which amounted to $2.0 million.

-17-

**g.**   In the alternative, whether Section IV of APA's Supplemental Payments, Limits, Section IV is ambiguous:

(1)   APA's insurance clause provides for payment of "all costs" and "all interest" and does not distinguish between prejudgment and post-judgment costs or interest.  Because APA's policy does not distinguish between prejudgment and post-judgment costs and interest and is ambiguous, APA is obligated to pay all costs and all interest "on the entire amount of any judgment" fixed by the state court at the time of judgment under Rule 1-062 and to make available for an appeal collateral on the insurance company's liability.

(2)   APA's insurance clause and New Mexico law contemplate that APA as an "insurer has a fiduciary duty to file and prosecute an appeal, and absent policy provisions to the contrary," APA's policy does not state which party, the insurer or insured, is required to post what collateral for an appeal.   APA's policy is therefore ambiguous.   A reasonable interpretation and construction of the ambiguous Section IV of APA's policy would require (1) APA to post collateral or cash for the full amount of the APA's liability to include the $95,000, plus all costs and all interest on the entire amount of any judgment fixed by the state court in the form of a bond at $2.0 million; and (2) Dr. Ham and AEC are required to post cash-collateral on the $6.0 million punitive award.

## VII.  <u>MOTIONS</u>

**A.**   **Pending Motions (indicate the date filed):**

      **1.**     Plaintiff/Counter-Defendant: None.

      **2.**     Defendants/Counter-Plaintiff:  None.

**B.**     **Motions (other than motions in limine) which may be filed:**

      **1.**     Plaintiff: Daubert motion(s) to exclude expert testimony or voir dire and related

motions at trial regarding opposing experts.

      **2.**     Defendants:  None.

The briefing must be complete a Notice of Completion of Briefing must be filed with the

Court by _____.  See Docs. 131 & 180.  Parties' voir dire of experts may include

Daubert matters.

     **C. Motions in limine which may be filed.**

1. Plaintiff: Motions relating to admissibility of evidence of punitive damages and of

evidence relating to legally obligating the Fund to pay pursuant to settlement.

2. Defendant: None

3. Other party

4. Motions in limine should be filed with the Court by October 15, 2009.  See Doc. 131,

**Deleted:** not later than 14 calendar days before¶
trial; responses should be filed not later than 7 calendar days after such a motion is filed. Replies are optional, a Notice of Completion of Briefing is not required, and the Court may rule upon a motion in limine based upon the motion and response.

## VIII.  **DISCOVERY**

**A.**     **Has discovery been completed?**  _X_  Yes  _____  No

If no, discovery terminates on:  N/A

**B.**     **Are there any discovery matters of which the court should be aware?**

     ____  Yes  _X_  No


## IX.  **ANTICIPATED WITNESSES**

*Each party is under a continuing duty to supplement this list and the description of anticipated testimony. This does not, however, apply to a rebuttal witness. Indicate if the witness will testify in person or by deposition and include a brief description of the anticipated testimony. If the testimony is by deposition, identify the deposition by page number and line number. A witness who has not been identified and whose testimony has not been disclosed may not testify at trial unless good cause is shown.*

The parties have agreed to exchange identification of deposition testimony by page number and line number by December 18, 2009 and rebuttal designation by December 23, 2009.

**A. Plaintiff's Witnesses:**

**1. Plaintiff will call or have available at trial the following witnesses:**

Lisa K. Vigil, Vigil & Lucero, 301 Gold Ave SW #201, Albuquerque, NM 87102, (505) 243-2808. Ms. Vigil has information regarding the settlements reached by the parties in the underlying case as well as information concerning the efforts of the parties to settle the underlying case throughout its pendency. Ms. Vigil is expected to testify in person.

Thomas Rushton can be reached care of his counsel, William C. Madison and Rebecca S. Kenny. Mr. Rushton has information regarding the PCF's decision to not contribute toward settlement of the underlying claims in advance of trial. Mr. Rushton is expected to testify in person.

Catherine Shutack, Vice President, Claims, American Physicians Assurance Corp., can be reached care of APA's counsel, Timothy L. Fields and Jennifer G. Anderson. Ms. Shutack has information concerning the trial of the claims in the underlying case, as well as information

concerning the efforts of the parties to settle the underlying case throughout its pendency. Additionally, Ms. Shutack has knowledge concerning the contents of the policy at issue and the defense of the underlying case, as well as knowledge regarding the settlements reached by the parties in the underlying case, and the negotiations leading up to those settlements.  Finally, Ms. Shutack has knowledge concerning the claims handling practices of APA, and is further expected to testify concerning the October 2007 meeting with defense counsel and APA's relationship and communications with Mr. Sharp.  Ms. Shutack is expected to testify in person.

**2. Plaintiff may call the following witnesses:**

William C. Madison, Madison, Harbour & Mroz, PA, PO Box 25467, Albuquerque, NM 87125-0467, (505) 242-2177.  Mr. Madison has information regarding the settlements reached by the parties in the underlying case, and the negotiations leading up to those settlements, as well as information concerning the efforts of the parties to settle the underlying case throughout its pendency.  Mr. Madison is expected to testify in person.

Rebecca S. Kenny, Madison, Harbour & Mroz, PA, PO Box 25467, Albuquerque, NM 87125-0467, (505) 242-2177.  Ms. Kenny has information regarding the settlements reached by the parties in the underlying case, and the negotiations leading up to those settlements, as well as information concerning the efforts of the parties to settle the underlying case throughout its pendency.  In addition, Ms. Kenny may be called as a rebuttal witness concerning her attendance at a defense counsel meeting in October of 2007.  Ms. Kenny is expected to testify in person.

Erla Lutz can be reached care of her counsel, William C. Madison and Rebecca S. Kenny.  Ms. Lutz has information regarding the settlements reached by the parties in the underlying case as well as information concerning the efforts of the parties to settle the underlying case throughout its pendency.  Additionally, Ms. Lutz has information concerning the

Patient Compensation Fund's ("PCF") evaluation of the underlying case and PCF's decision to not contribute toward settlement of the underlying claims in advance of trial.  Ms. Lutz is expected to testify in person.

Michael Demers, Claims Representative, American Physicians Assurance Corp., can be reached care of APA's counsel, Timothy L. Fields and Jennifer G. Anderson.  Mr. Demers has information concerning the trial of the claims in the underlying case, as well as information concerning the efforts of the parties to settle the underlying case throughout its pendency.  Additionally, Mr. Demers has knowledge concerning the contents of the policy at issue and the defense of the underlying case.  Mr. Demers is expected to testify in person.

Marc Bernstein, Senior Claims Representative, American Physicians Assurance Corp., can be reached care of APA's counsel, Timothy L. Fields and Jennifer G. Anderson.  Mr. Bernstein has information concerning the trial of the claims in the underlying case, as well as information concerning the efforts of the parties to settle the underlying case throughout its pendency.  Additionally, Mr. Bernstein has knowledge concerning the contents of the policy at issue and the defense of the underlying case.  Mr. Bernstein is expected to testify in person.

Joe Grant, Litigation Claims Manager, American Physicians Assurance Corp., can be reached care of APA's counsel, Timothy L. Fields and Jennifer G. Anderson.  Mr. Grant has information concerning the trial of the claims in the underlying case, as well as information concerning the efforts of the parties to settle the underlying case throughout its pendency.  Additionally, Mr. Grant has knowledge concerning the contents of the policy at issue, the defense of the underlying case, and interactions with Mr. Sharp.  Mr. Grant is expected to testify in person.

Randy Burroughs, 500 E. Tenth Street, Alamogordo, New Mexico 88310.   Mr. Burroughs will testify to his knowledge regarding notice, contact with APA generally and in the underlying case, damages, negotiations and attempts to secure bond for appeal.  Mr. Burroughs is expected to testify in person.

Sarah Singleton, Montgomery & Andrews, PA, PO Box 2037, Santa Fe, NM 87504-2037.   Ms. Singleton is expected to testify concerning the efforts of the parties to secure a supercedeas bond, her retention by APA, and the planned appeal.  Ms. Singleton is expected to testify in person.

Donald J. Ham, MD, care of Mark C. Dow and Simone Seiler.  Dr. Ham is expected to testify concerning the fact that he was provided with a good defense and that he believed that he did not commit malpractice.  Dr. Ham will also testify about his damages, his finances, and about settlement of the underlying case.  Dr. Ham is expected to testify in person.

R. Kevin Clinton, CEO, American Physicians Assurance Corp., can be reached care of APA's counsel, Timothy L. Fields and Jennifer G. Anderson.   Mr. Clinton has knowledge concerning the contents of the policy at issue and the defense of the underlying case, as well as knowledge regarding the settlements reached by the parties in the underlying case.  Mr. Clinton also has knowledge concerning the claims handling practices and philosophies of APA, as well as APA's history of success in trying cases in New Mexico.   Mr. Clinton also has knowledge regarding APA's historical ratings and reserves.   Finally, Mr. Clinton is expected to testify concerning the October 2007 meeting with defense counsel.  Mr. Clinton is expected to testify in person.

William P. Slattery, Hinkle, Hensley, Shanor & Martin, LLC, PO Box 2068, Santa Fe, NM 87504-2068.   Mr. Slattery is expected to testify as a rebuttal witness concerning his

Deleted: d

-23-

experiences representing APA insureds and his participation in an October of 2007 defense counsel meeting, to the extent such evidence is admissible and presented by Dr. Ham and AEC. Mr. Slattery is expected to testify in person.

Lynn Sharp, Sharp Law Firm, 9200 Montgomery Blvd., NE #402, Albuquerque, NM 87111 (505)842-5050.  Mr. Sharp has information concerning the trial of the claims in the underlying case, as well as information concerning the efforts of the parties to settle the underlying case throughout its pendency.  Mr. Sharp also has information concerning APA's lack of interference in his efforts to defend Dr. Ham and AEC in the underlying litigation.   Mr. Sharp is expected to testify in person.

Bridget Rae, Regional Claims Manager, American Physicians Assurance Corp., can be reached care of APA's counsel, Timothy L. Fields and Jennifer G. Anderson.  Ms. Rae has information concerning the trial of the claims in the underlying case, as well as information concerning the efforts of the parties to settle the underlying case throughout its pendency. Additionally, Ms. Rae has knowledge concerning the contents of the policy at issue and the defense of the underlying case.  Ms. Rae is expected to testify in person.

Ann Flood, COO, American Physicians Assurance Corp., can be reached care of APA's counsel, Timothy L. Fields and Jennifer G. Anderson.  Ms. Flood has knowledge concerning the contents of the policy at issue and the defense of the underlying case, as well as knowledge regarding the settlements reached by the parties in the underlying case.  Ms. Flood also has knowledge concerning the claims handling practices and philosophies of APA, as well as APA's history of success in trying cases in New Mexico.   Ms. Flood is expected to testify concerning the October 2007 meeting with defense counsel.  Ms. Flood is expected to testify in person.

Thomas Reed, Litigation Claims Manager, American Physicians Assurance Corp., can be reached care of APA's counsel, Timothy L. Fields and Jennifer G. Anderson.  Mr. Reed has knowledge concerning APA's relationship and communications with Mr. Sharp.  Mr. Reed is expected to testify in person.

Robert White, 200 E. Kari Court, Jacksonville, FL  32259, Phone:  (904) 230-1005.  Mr. White is expected to testify concerning the obligations of an insurer, including the duty to defend and the duty to indemnify, industry standard and practices with respect to adjusting and settling claims, and the parties' rights and obligations under the policy at issue in this case.  In addition, Mr. White will specifically address the opinions offered by Defendants/Counter-Plaintiffs' expert, Steven Plitt.  Mr. White is expected to testify in person.

Steven W. Mortenson, MD, 831 Gail Gardner Way, Prescott, AZ, 86305.  Dr. Mortenson is expected to testify that he was retained by APA as an expert witness in the underlying case. He is expected to testify that Dr Ham did not violate the applicable standard of care.  Dr. Mortenson is expected to testify in person.

Neal Shadoff, M.D., Presbyterian Heart Group 1001 Coal Ave, SE, Albuquerque, NM 87106, (505) 841-1000.  Dr. Shadoff is expected to testify that he was retained by APA as an expert witness in the underlying case.  He is expected to testify that Dr. Ham did not cause the heart attack, and that it could have occurred anywhere.  Dr. Shadoff is expected to testify in person.

James Hurley, Tillinghast - Towers Perrin, 3500 Lenox Road Suite 900, Atlanta, GA 30326-4238, Phone:  (404) 365-1632.  Mr. Hurley will specifically address the opinions offered by Defendants/Counter-Plaintiffs' expert, Allen Parkman, including, but not limited APA's financial condition, the effect of a punitive damages award on APA's rating and ability to

function in the industry.   In addition, Mr. Hurley may testify regarding Plaintiffs'/Counter Defendants' alleged damages, including, but not limited to any claim for interest. Mr. Hurley is expected to testify in person.

All witnesses listed by Defendant/Counter-Plaintiff, or which cannot be anticipated prior to rebuttal.

All witnesses discovered during the discovery process.

All witnesses identified by Defendant/Counter-Plaintiff.

**B. Defendant's Witnesses:**

**1. Defendant will call or have available at trial the following witnesses:**

**1.** Donald J. Ham, MD, Alamogordo Eye Clinic, 1124 Tenth Street, Alamogordo, New Mexico 88310.  Dr. Ham will testify about his knowledge of the case and the settlement as set forth in his deposition.  In person testimony.

**2.** Lynn Sharp, Esq.  Sharp Law Firm, 9201 Montgomery Blvd.NE #402, Albuquerque, NM 87111 (505) 842-5050.  Mr. Sharp will testify about his knowledge of the case, his interactions with APA during his defense of the case, his interactions with APA generally, and the settlement in the case.  In person testimony.

**3.** Catherine Shutack, APA, care of Jennifer G. Anderson, Esq., Modrall Sperling Roehl Harris & Sisk P.A., PO Box 2168, Albuquerque, NM  87103 (505) 848-1800.  Ms. Shutack will testify regarding her knowledge of the case, the defense and adjustment of my claim during the case and after the verdict.  Ms. Shutack may testify by video deposition or in person. The entire video deposition is being offered at this time, but should be reduced to 45 to 60 minutes prior to trial.

**4.** Michael Demers, APA, care of Jennifer G. Anderson, Esq., Modrall Sperling Roehl Harris & Sisk P.A., PO Box 2168, Albuquerque, NM  87103 (505) 848-1800.  Mr. Demers will testify regarding his knowledge of adjustment and settlement decisions made in the case.  In person testimony.

**5.** Marc Bernstein, Esq., APA, care of Jennifer G. Anderson, Esq., Modrall Sperling Roehl Harris & Sisk P.A., PO Box 2168, Albuquerque, NM  87103 (505) 848-1800.  Mr. Bernstein will testify regarding his knowledge of the case, the defense and adjustment of Dr. Ham's claim during the case and after the verdict.  In person testimony.

**6.** Randolph Burroughs, Esq., 500 E. Tenth Street, Alamogordo, New Mexico 88310.  Mr. Burroughs will testify to his knowledge regarding notice, contact with APA generally and in the underlying case, damages, negotiations and attempts to secure bond for appeal.  In person testimony.

**7.** Joseph Grant, Litigation Claims Manager, APA, care of Jennifer G. Anderson, Esq., Modrall Sperling Roehl Harris & Sisk P.A., PO Box 2168, Albuquerque, NM  87103 (505) 848-1800.  Mr. Grant has knowledge concerning APA's relationship and communications with Mr. Sharp.  Mr. Grant may testify by video deposition or in person.  The entire video deposition is being offered at this time, but should be reduced to 45 to 60 minutes prior to trial.

**8.** Bridget Rae, APA, care of Jennifer G. Anderson, Esq., Modrall Sperling Roehl Harris & Sisk P.A., PO Box 2168, Albuquerque, NM  87103 (505) 848-1800.  Ms. Rae will testify regarding her knowledge of adjustment and settlement decisions made in the case.  Ms. Rae may testify by video deposition or in person.  The entire video deposition is being offered at this time, but should be reduced to 45 to 60 minutes prior to trial.

9.     William C. Madison, Esq., attorney for Patient Compensation Fund, Madison, Harbour & Mroz, P.A., 201 Third Street, NW Suite 1600, Albuquerque, New Mexico 87102. Mr. Madison will testify to his knowledge regarding the case, the appeal bond and the settlement, and may testify to his firm's experiences with APA, as set forth in his deposition.   In person testimony.

10.     Erla Lutz, employee of Patient Compensation Fund, c/o William C. Madison, Harbour & Mroz, P.A., 201 Third Street, NW Suite 1600, Albuquerque, New Mexico 87102. Ms. Lutz will testify to her knowledge regarding the case as set forth in her deposition.   In person testimony.

11.     Thomas Rushton, c/o William C. Madison, Harbour & Mroz, P.A., 201 Third Street, NW Suite 1600, Albuquerque, New Mexico 87102.   Mr. Rushton has information regarding the PCF's decision to not contribute toward settlement of the underlying claims in advance of trial.   In person testimony.

12.     Lisa Vigil, Esq., Plaintiff's attorney in underlying case, 301 Gold Avenue, SW, Suite 201, Albuquerque, New Mexico 87102.   Ms. Vigil will testify about her knowledge of the case and the settlement. In person testimony.

13.     Ann Flood, APA, care of Jennifer G. Anderson, Esq., Modrall Sperling Roehl Harris & Sisk P.A., PO Box 2168, Albuquerque, NM  87103 (505) 848-1800. Ms. Flood may testify to her knowledge of APA's pattern and practice of not settling cases and pushing cases to trial and other APA policies and procedures.     Ms. Flood may testify by video deposition or in person.  The entire video deposition is being offered at this time, but should be reduced to 45 to 60 minutes prior to trial.

-28-

14.     Jennifer G. Anderson, Esq. Modrall Sperling Roehl Harris & Sisk P.A., PO Box 2168, Albuquerque, NM  87103 (505) 848-1800.  Ms. Anderson will be called to testify about her September 19, 2008 letter regarding the use of the $200,000 as collateral, and the fact that the terms of the APA/Estate settlement were not discussed with Dr. Ham or his counsel, and were not disclosed to Dr. Ham or his attorneys until April 2009.  There is a substantial fact dispute about this issue and Ms. Anderson's testimony is required.  In person testimony.

15.     The Honorable Robert Jacobvitz or David T. Thuma, Esq., [contact information is available in Dr. Ham's answers to discovery].   Mr. Jacobvitz will testify regarding his knowledge of Dr. Ham's personal bankruptcy and AEC's bankruptcy.  He is to be called to prove up his preparation for bankruptcy.  Judge Jacobvitz has requested that his partner testify and prove up their bankruptcy invoice.  This issue will be taken up with the Court and APA counsel.

16.     R. Kevin Clinton, APA, Jennifer G. Anderson, Esq. Modrall Sperling Roehl Harris & Sisk P.A., PO Box 2168, Albuquerque, NM  87103 (505) 848-1800.  Mr. Clinton;s testimony will cover APA's pattern and practice of not settling cases and pushing cases to trial to increase profits and the profitability of the company in the last three years.  Mr. Clinton will testify about the decision not to contribute to the appellate bond.  Mr. Clinton may testify by video deposition or in person.  The entire video deposition is being offered at this time, but should be reduced to 45 to 60 minutes prior to trial.

17.     Joseph McClaugherty, Esq. - McClaugherty & Silver PC 55 Old Santa Fe Trail, Santa Fe, NM  87501, (505) 988-8804.  Mr. McClaugherty is an experienced medical malpractice defense attorney in New Mexico representing APA insureds and employed by APA to defend its insured doctors.  Mr. McClaugherty is expected to testify regarding the policies and

procedures of APA in adjusting and settling claims in litigation, to include but not limited to certain matters in the Lutz deposition under seal.  In person testimony.

**18.**    Peter Beaudette, M.D., 7110 Wyoming Blvd. NE, Albuquerque, New Mexico 87109, (505) 346-0500.  Dr. Beaudette is an ophthalmologist in Albuquerque, New Mexico.  He was engaged by APA as a consultant in the underlying case.  He is expected to testify about the facts, circumstances and his opinions formed in the underlying case.  In person testimony.

**19.**    Arthur J. Weinstein, M.D. – Eye Associates of New Mexico, 806 Dr. Martin Luther King, Jr. Blvd NE, Albuquerque, NM 87102, (505) 842-6575.  Dr. Weinstein is a highly regarded ophthalmologist who was engaged by APA as an expert in the underlying case.  Dr. Weinstein was a consultant for APA in the underlying case.  He is expected to testify about the opinions that he formed and provided APA during the adjustment of the case.  In person testimony.

**20.**    Steve Plitt/Expert - Kunz, Plitt, Hyland, Demlong & Kleifield 3838 N. Central Ave., Ste. 1500 Phoenix, AZ 85012-1902 (602) 331-4600  Mr. Plitt is expected to testify regarding the tripartite relationship in New Mexico between an insurer, the insured and the Patients' Compensation Fund, the insurance adjuster's duties and attorney's duties while adjusting an insurance claim to include the duties to defend, indemnify and settle within policy limits, industry standards and practices for adjusting and settling claims, and the settlement between the parties.  In person testimony.

**21.**    Allan Parkman, Ph D., J.D./Expert - 1416 Marquette Place, NE, Albuquerque, NM  87106, (505) 242-1919.  Mr. Parkman has a Ph.D. in Economics and is a Professor Emeritus at the Anderson Schools of Management at the University of New Mexico.  He is expected to testify as to Dr. Ham's and AEC's financial condition, actual damages, interest, and

APA's financial condition for award of punitive damages, and matters set forth in his deposition. In person testimony.

**2. Defendant may call the following witnesses:**

    **1.**    Neal Shadoff, M.D., Presbyterian Heart Group 1001 Coal Ave, SE**,** Albuquerque, NM  87106**,** (505) 841-1000.  Dr. Shadoff is a highly respected cardiologist in Albuquerque, New Mexico.  He was engaged by APA as an expert witness in the underlying case.  He is expected to testify that Dr. Ham did not cause the heart attack, and that it could have occurred anywhere.  In person testimony.

    **2.**    Robert White, 200 E. Kari Court, Jacksonville, FL  32259, Phone:  (904) 230-1005.  Mr. White is expected to testify concerning the matters reviewed in his deposition.  In person testimony or his entire deposition, which should be reduced prior to trial.

    **3.**    James Hurley, Tillinghast - Towers Perrin, 3500 Lenox Road Suite 900, Atlanta, GA 30326-4238, Phone: (404) 365-1632.  Mr. Hurley is expected to testify about matters in his deposition.  In person testimony or his entire deposition, which should be reduced prior to trial.

    **4.**    Cynthia Buttram, Office Manager, Alamogordo Eye Clinic, 1124 Tenth Street, Alamogordo, New Mexico 88310. Ms. Buttram is expected to testify regarding her knowledge of impact and damage, as a result of the *Cardon* case, upon Dr. Ham and AEC in Alamogordo.  In person testimony.

    **5.**    Graciella Rivera, employee, Alamogordo Eye Clinic, 1124 Tenth Street, Alamogordo, New Mexico 88310.  Ms. Rivera will testify about her knowledge impact of the *Cardon* case, on Dr. Ham personally, to include the newspaper publicity.  In person testimony.

6.      Ernest Martinez, P.O. Box 443, Alamogordo, New Mexico 88310.  Mr. Martinez is expected to testify regarding his knowledge of community impact of the *Cardon* trial and verdict on Dr. Ham's community reputation.  In person testimony.

7.      James Harris, 33 Adobe Ranch Trail, Alamogordo, New Mexico 88310.  Mr. Harris is expected to testify as to his knowledge regarding impact of the underlying case on Dr. Ham's reputation in the community.  In person testimony.

8.      Mike Bell, Alamogordo Daily News, 518 24th Street, Alamogordo, New Mexico 88310.  Mr. Bell is expected to testify regarding his knowledge of newspaper articles regarding the case.  In person testimony.

9.      Karl Anderson, Alamogordo Daily News, 518 24th Street, Alamogordo, New Mexico 88310.  Mr. Anderson may testify regarding his knowledge of newspaper coverage of the case.  In person testimony.

10.     Joanna Castello, Alamo Optical, 1120 Tenth Street, Alamogordo, New Mexico 88310.  Ms. Castello may testify regarding her knowledge of damages and impact to Dr. Ham and AEC.  In person testimony.

11.     Michael W. Brennan, Brennan & Sullivan, P.A. 128 E. DeVargas St., Santa Fe, NM 87501, (505) 995-8514.  Mr. Brennan is expected to testify regarding his experiences with APA in adjusting and settling claims in litigation.  It is our information and belief that Mr. Brennan terminated his relations as defense counsel for APA insured for ethical and professional reasons.  In person testimony.

12.     Greg Biehler, Esq., 6715 Academy Rd NE, Albuquerque, NM, (505) 828-3600, is expected to testify concerting Mr. Grant's testimony wherein Grant states that Lynn Sharp was aware of the settlement between Dr. Arik and Stoval.  Grant implies that defense attorney Lynn

-32-

Sharp colluded in the settlement between Dr. Arik and Stoval and exposed APA to a bad faith claim.  Mr. Sharp has denied any collusion, and in fact, Mr. Biehler, who was personal counsel for Dr. Arik will testify that Mr. Sharp had no knowledge of the settlement and did not collude. Mr. Biehler 's testimony will impeach Mr. Grant's sworn testimony.  In person testimony.

13.     Stephen G. Durkovich, Esq., Law Office of Stephen Durkovich 111 Tulane SE Albuquerque, NM  87106 (505) 986-1800  Mr. Durkovich is an experienced medical malpractice plaintiffs attorney in New Mexico.  Mr. Durkovich is expected to testify regarding his experiences with APA in adjusting and settling claims in litigation, to include but not limited to certain matters in the Lutz deposition under seal.  In person testimony.

14.     Gregory W. Chase, Esq., Shapiro, Bettinger Chase LLP 7411 Jefferson St. NE Albuquerque, NM  87109 (505) 888-6463  Mr. Chase is expected to testify regarding his experiences with APA in adjusting and settling claims in litigation, to include but not limited to certain matters in the Lutz deposition under seal.  In person testimony.

15.     Pete Cook, President, First National Bank of Alamogordo, 414 10th Street Alamogordo, NM  88310 (575) 437-4880  Mr. Cook is expected to testify regarding Dr. Ham's attempt to get a letter of credit for an appeals bond.  In person testimony.

16.     All persons listed as witnesses by APA.

17.     All rebuttal witnesses.

18.     All persons necessary to authenticate the admissibility of a document at trial.

## X. <u>TRIAL PREPARATION</u>

**A.     Exhibits.**

The parties must confer over all trial exhibits. This does not apply to rebuttal exhibits that

cannot be anticipated before trial. The parties must file the parties' "consolidated exhibit list

identifying all exhibits that the parties have stipulated are admissible" and a "consolidated

exhibit list identifying all exhibits the parties have stipulated to be authentic, but to which there

are other objections," including the basis of the objections, no later than 21_____ calendar days

before trial. For those exhibits on which a stipulation could not be reached, the offering party

must file a separate contested exhibit list" no later than 21_____ calendar days before trial.

Each party's contested exhibit list must be filed on the date identified in the preceding paragraph.

In addition, two courtesy copies of the contested and uncontested exhibit list must be delivered to

the judge's chambers, along with a CD or other memory device containing the exhibit list(s) in

WordPerfect or Microsoft Word.

All exhibits must be marked **before** trial. Exhibits must be marked numerically, e.g., Plaintiff

takes numbers 1-50 and Defendant takes numbers 51-100, and should not identify the party

offering the exhibit. The identification number will remain the same whether the exhibit is

admitted or not.

**B.    Witness List.**

A party's witness list must be filed with the Clerk and served on all parties 21 calendar days

before trial_____. Witness lists also should be submitted on a CD or

other memory device in WordPerfect or Microsoft Word. Indicate whether the witness is

testifying by deposition or in person. Objections to use of deposition testimony, including the

specific basis of the objections, are due within ten (10) calendar days of service of the witness

list. The objecting party must highlight those portions of the requested deposition testimony to

which the party objects.  Plaintiff must use a yellow highlighter and defendant must use a blue

---

*Margin annotations:*

**Deleted:** an original plus three (3) copies of

**Deleted:** an original plus three (3) copies of

**Deleted:** An original plus three (3) copies of e

**Deleted:** floppy disk

**Deleted:** n original and three (3) copies of a

**Deleted:** by

**Deleted:** floppy disk

**Deleted:** ¶

**Deleted:** fourteen (14)

highlighter. The parties must confer about any disputes and, if unable to resolve any differences, must notify the Court in writing at least <u>seven</u>          calendar days before trial.

**C.**    **Voir Dire.**

   **1.**    If allowed, do the parties wish to participate in *voir dire*?

                        Plaintiff/Counter-Defendant   <u> X </u>   Yes   <u>    </u>   No

                        Defendants/Counter-Plaintiffs   <u>  X  </u>   Yes   <u>    </u>   No

   **2.**    Each party wishing to participate in *voir dire* must serve on all parties and file with the clerk, a pleading entitled Proposed Voir Dire Questions.  The pleading must identify the specific areas about which the party wishes to inquire and must set forth proposed *voir dire* questions.  This request must be filed at least <u>21</u>          calendar days prior to jury selection.

   **1. In General.** The parties must confer about proposed jury instructions and make a good faith effort to agree.

   **2. Submission of Proposed Instructions.** The parties must submit one mutually approved set of jury instructions with citations, including pin cites, not later than <u>November 30, 2009</u>                     (normally, the date of the Pretrial Conference). For those **few** instructions the parties were unable to agree upon, each party must submit its own proposed instructions with citations, including pin cites, at the same time as submission of the mutually agreed instructions.

   **3. Form of Instructions.**

   **a.** Submit sets of double-spaced instructions as follows:
2 set(s) with citations and numbered sequentially, one of which will be filed.

   **b.** Submit no more than one instruction to a page. Pattern instructions should be identified.

**c.** All deviations from pattern instructions must be identified as "modified" in the citation and the modification must be highlighted in the body of the instruction. Be sure to include pertinent, i.e. Supreme Court, Tenth Circuit or New Mexico, authority. Use pin cites.

**d.** Submit a cover sheet on all sets of instructions.

**e.** Instructions and verdict form(s) also should be submitted on a CD or other memory device in WordPerfect or Microsoft Word.

**Deleted:** floppy disk

**4. Deadlines for Submitting Instructions.**

**a.** Instructions shall be filed not later than November 30, 2009 _____ (normally, the date of the Pretrial Conference).

**b.** Supplemental unanticipated jury instructions may be submitted at trial. Please include a cover sheet.

**E. Statement of Case.**

The parties must confer and submit an agreed statement of the case to the Court that will be read to the jury panel during jury selection. The statement (along with a CD or other memory device containing the statement of the case in WordPerfect or Microsoft Word) must be submitted to the Court 21 calendar _____ days before jury selection.

**Deleted:** floppy disk

**F. Submissions for Bench Trials.  N/A**

**1.** The parties must submit one mutually approved set of proposed findings of fact and conclusions of law not later than _____ calendar days before trial. For those findings of fact and conclusions of law the parties were unable to agree upon, each party must submit its own proposed findings of fact and conclusions of law at the same time as submission of the mutually approved set. Parties should submit ultimate findings of fact, as opposed to evidentiary findings, and proposed findings and conclusions also should be faxed to the judge's chambers.

**2.** Also submit a CD or other memory device in WordPerfect or Microsoft Word

> **Deleted:** floppy disk

containing any proposed findings of fact and conclusions of law.

**G. Trial Briefs.**

    **1.** The parties may submit optional trial briefs not to exceed fifteen pages, not later than

21_____ calendar days before trial.

## XI.  <u>OTHER MATTERS</u>

**A.**    **Settlement Possibilities.**

    **1.**    The possibility of settlement in this case is considered:

      __x__ Poor   _____ Fair   _____ Good   _____ Excellent _____ Unknown

    **2.**    Do the parties have a settlement conference set with the assigned Magistrate Judge?

      __x____ Yes   _____ No   If yes, when?  <u>December 1, 2009</u>

If a settlement conference has already been held, indicate approximate date: <u>Dec. 1, 2009</u>

Would a follow-up settlement conference be beneficial? _____ Yes ___ No

    **3.**    Does either party wish to explore any alternatives for dispute resolution such as mediation or summary jury trial?  If yes, please identify: _____. If not, explain why not:

**B. Length of Trial and Pretrial Conference and Trial Settings.**

    **1.** This action is a _____ Bench trial __x___ Jury Trial _____ Both

    **2.** The case is set for a pretrial conference on _____.

    **3.** The case is set for trial on <u>January 19, 2010</u>. If there is no setting, the parties estimate they will be ready for trial by _____.

**4.** The parties shall make every effort to avoid cumulative exhibits, witnesses and

questioning.

The estimated length of trial is <u>10-14 day(s)</u>.

## XII. <u>EXCEPTIONS</u>

1. Plaintiff objects to any witnesses listed by Defendants and not on Plaintiff's witness list as irrelevant to this case.

2. Plaintiff does not agree to the below statement of law proposed by the Defendants because it is not an actual ruling of the Court regarding a specific issue in this case. Defendants state that the statement of law is taken directly from this Court's Order as follows:

The Court in its Order [DN 182] states: "New Mexico authority suggests "that an insurer has a fiduciary duty to file and prosecute an appeal, absent a policy provision to the contrary, where there are reasonable grounds to believe substantial interests of the insured may be served or protected." <u>Sanchez v. Kirby</u>, 40 P.3d 1009, 1011-12 (N.M. Court. App. 2001); <u>see also</u> 22 Holmes' Appleman on Insurance 2d § 136.11 at 84-85 (2003). The court would note that given a ratio of punitive to compensatory damages that is 63.01 to 1, Dr. Ham and AEC have a strong argument that reasonable grounds for an appeal existed. <u>See</u> Docs. 141 at 14 & 175 at 5; <u>Campbell v. State Farm</u>, 538 U.S. 408, 425 (203) ("few awards exceeding a single digit ratio between punitive and compensatory damages...will satisfy due process")." DN 182.

3. Defendant objects to Plaintiff's designation of William Slattery as a surprise witness. Mr. Slattery was not disclosed to Defendant as a potential witness until December 3, 2009 in this second submission of the pretrial order, despite Defendant's interrogatory number 13, which asked Plaintiff to disclose all witnesses. Plaintiff never supplemented

their responses to disclose Mr. Slattery.  Discovery concluded on September 30, 2009.

Defendant will not have opportunity to depose Mr. Slattery prior to trial.

## XIII.  MODIFICATIONS-INTERPRETATION

The Pretrial Order when entered will control the course of trial ands may only be amended *sua sponte* by the Court or by consent of the parties and Court approval.  The pleadings will be deemed merged herein.

The foregoing proposed Pretrial Order (prior to execution by the Court) is hereby approved this 4th day of December, 2009.


*Approval via Email, December 4, 2009*
TIM FIELDS
JENNIFER ANDERSON
Attorneys for Plaintiff
Modrall Sperling Roehl Harris & Sisk P.A.
PO Box 2168
Albuquerque, NM  87103
(505) 848-1800


/s/ Simone M. Seiler
MARK C. DOW, ESQ.
CHRISTOPHER P. BAUMAN, ESQ.
SIMONE M. SEILER, ESQ.
BRIAN G. GRAYSON, ESQ.
Attorneys for Defendants/Counter-Plaintiffs
Bauman, Dow & León, P.C.
PO Box 30684
Albuquerque, NM  87190
(505) 883-3191

DATED: December 8, 2009 _____

_/s/ Paul Kelly, Jr._ _____
Hon. Paul J. Kelly, Jr.
United States Circuit Judge
Sitting by Designation